# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Rudolph Carryl, ) | Civil Action No.: 4:20-cv-04210-JMC |
| Petitioner, ) | |
| v. ) | **ORDER AND OPINION** |
| Warden Stevie M. Knight, ) | |
| Respondent. ) | |

Petitioner Rudolph Carryl filed this Motion for Reconsideration of the court's order dismissing his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 44.) In its prior Order (ECF No. 41), the court accepted the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 25), recommending this Petition be dismissed without prejudice after concluding the court did not have jurisdiction over Petitioner's claim under § 2241 because he could not demonstrate that he is entitled to relief under the § 2255 savings clause. (*Id.* at 3.)

For the reasons set forth below, the court **DENIES** Petitioner's Motion for Reconsideration. (ECF No. 44.)

### I.     RELEVANT BACKGROUND

Petitioner was sentenced to a seventy-four (74) month term of imprisonment after he pleaded guilty to securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff.[1] (ECF No. 25 at 2.)

---

[1] Specifically, Petitioner agreed at his sentencing hearing before a Magistrate Judge of the United States District Court for the Western District of North Carolina that

> . . . in or about January of 2015 through at least October 2017, in Mecklenburg County, within the Western District of North Carolina, you, Mr. Carryl, together with persons known and unknown to the grand jury, willfully, directly and

1

Petitioner expressly waived his rights to appeal his conviction under his plea agreement, along with his right to challenge his conviction through post-conviction proceedings. (*United States v. Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF No. 70 at 16 (W.D.N.C. Dec. 2, 2019).) Immediately after the sentencing court entered its judgment, Petitioner filed both an appeal with the United States Court of Appeals for the Fourth Circuit (*Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF No. 59), and a *pro se* motion to vacate under 28 U.S.C. § 2255 (*id.*, ECF No. 58).[2] The Fourth Circuit subsequently dismissed Petitioner's appeal on the ground that it was barred by the knowing and voluntary waiver of appellate rights within his plea agreement. (*Id.*, ECF No. 72 at 1.)

---

> indirectly, by use of the means and instrumentalities of interstate commerce and the mails, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon investors and others, in connection with the sale of securities . . . .

*United States v. Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF No. 70 at 5 (W.D.N.C. Dec. 2, 2019). Within his plea colloquy, Petitioner acknowledged that he understood the charges in his plea agreement and the maximum penalty they carried, and that he had consulted with his lawyer regarding his plea. (*Id.* at 7, 10.) He acknowledged he "had the right to plead not guilty, to have a speedy trial before a judge and jury," (*id.* at 9), and that by going to trial, he was waiving that right (*id.* at 10). He conceded he was guilty of securities fraud (*id.* at 11), and affirmed that he "underst[ood] that the right to appeal [his] conviction and/or [] sentence has been expressly waived in the plea agreement" (*id.* at 16). Petitioner similarly acknowledged that he understood that the plea agreement expressly waived his right "to challenge [his] conviction in . . . a post-conviction proceeding." (*Id.*) Based on Petitioner's and his counsel's representations within the colloquy, the court accepted Petitioner's plea after finding it to be "knowingly and voluntarily made" such that Petitioner understood the charges, potential penalties, and consequences thereof. (*Id.* at 18-19.)

[2] Petitioner's first motion to vacate pursuant to § 2255 was dismissed as premature with permission to refile once the Fourth Circuit ruled on the pending appeal. (*Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF No. 67 at 2.) After his appeal was denied, Petitioner re-filed his motion on August 17, 2020. (*Id.*, ECF No. 74.)

On November 2, 2020, the sentencing court denied Petitioner's subsequent motion to vacate under § 2255 after a thorough review of the record. (*Id*., ECF No. 76.) Petitioner alleged his attorney provided ineffective assistance because she (1) "failed to challenge the Government on the key 'in connection with the purchase or sale of a security' statutory requirement that's necessary for a § 10(b) violation and a securities fraud conviction; (2) . . . failed to challenge the Government for not complying with the Private Securities Litigation Reform Act (PSLRA) heightened pleading requirements in not stating 'with particularity and specificity . . . the circumstances surrounding the alleged securities fraud;' and (3) . . . failed to attack the Government for its introduction of knowingly false evidence 'to the Court and Grand Jury that [Petitioner] 'solicited' the victims for their money through his company (CCM) website.'" (*Id*., ECF No. 76 at 6-7.) The court emphasized that a defendant's guilty plea functions as a waiver of "all non-jurisdictional defects in the proceedings conducted prior to entry of the plea." (*Id*., ECF No. 76 at 8 (citing *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010)).) Noting that Petitioner's knowing and voluntary guilty plea "foreclose[d] federal collateral review of prior constitutional violations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea," the court held Petitioner was not entitled to *habeas* relief. (*Id*.)

Importantly, the court also dismissed Petitioner's claims of actual innocence underlying his ineffective assistance argument. Petitioner asserted that his "fraudulent conduct did not 'touch' or 'coincide' with a securities transaction as the activity concluded prior to the purchase or sale of any securities," and "while [he] may certainly be guilty of common law fraud, he is not guilty of 'securities fraud.'" (*Id*., ECF No. 76 at 8-9.) Here too, the court noted Petitioner waived this claim and the associated ineffective assistance argument through his knowing and voluntary guilty plea. (*Id*., ECF No. 76 at 9 (citing *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).)

3

Petitioner had failed to show "extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing." (*Id*.)

On December 4, 2020, Petitioner filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner reiterated the same arguments: First, Petitioner repeated that the Government "failed to show a connection between Petitioner's conduct and the purchase or sale of any securities," a required element of the crime of securities fraud. (ECF No. 1 at 6.) Petitioner similarly restated his ineffective assistance of counsel claim, asserting his plea counsel "admitted to poor diligence in researching the statutory elements of the offense" before advising Petitioner to accept the guilty plea. (*Id*.) Finally, Petitioner challenged the four-point investment adviser enhancement to his sentence (*id*.), and alleged the Government knowingly used "false material evidence" in proceedings before the grand jury and the sentencing court (*id*. at 7).

Accepting the Magistrate Judge's Report, the court concluded that Petitioner's claims do not fall within the savings clause of § 2255, and that the court is therefore without jurisdiction to consider their merits. (ECF No. 41 at 6-8.) The court noted that Petitioner's actual innocence claim would fail regardless, because the conduct to which he admitted during his guilty plea and sentencing hearings provided an adequate factual basis supporting his conviction. (*Id*. at 8.) The court reiterated that Petitioner had failed to demonstrate that his guilty plea was involuntary, and therefore, that his ineffective assistance of counsel claims again needed to be dismissed. (*Id*. at 9.)

## II.     LEGAL STANDARD

Rule 59 allows a party to seek an alteration or amendment of a previous order of the court. Fed. R. Civ. P. 59(e). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson*

*v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *see also Collision v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir. 1994).  It is the moving party's burden to establish one of these grounds in order to obtain relief.  *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 285 (4th Cir. 2012).  The decision whether to reconsider an order under Rule 59(e) is within the sound discretion of the district court.  *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995).  A motion to reconsider should not be used as a "vehicle for rearguing the law, raising new arguments, or petitioning a court to change its mind."  *Lyles v. Reynolds,* C/A No. 4:14-1063-TMC, 2016 WL 1427324, at *1 (D.S.C. Apr. 12, 2016) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

### III.   ANALYSIS

#### A. Petitioner's Arguments

Petitioner seeks reconsideration based on three claims of "clear error."  First, Petitioner claims that the court interpreted the wrong criminal statute in its Order.  (ECF No. 44 at 1-2.) Petitioner argues that the Order improperly considered him a "broker" convicted of securities fraud under 15 U.S.C. § 77q, rather than 15 U.S.C. § 78j(b).  Second, Petitioner asserts the court incorrectly applied one of the statutory elements of 15 U.S.C. § 78j(b), which requires that the "manipulative and deceptive devices" be deployed "in connection with the purchase or sale of any security" ("transactional nexus requirement").[3]  (*Id*. at 3.)  Third, Petitioner argues that because he

---

[3] Petitioner raises this claim for the fourth time in these proceedings.  (*See* ECF No. 1 at 2 (raising same issue on direct appeal); *Id*. at 4 (reiterating same issue in § 2255 Motion); *Id*. at 6 (reiterating same issue in § 2241 Petition); ECF No. 44 (re-arguing the transactional nexus issue in the instant motion).)  In essence, Petitioner admits he stole from his victims but claims that his actions amount merely to common law fraud rather than securities fraud, because he did not use the stolen funds to purchase or sell securities as part of the fraud.  Petitioner's claim is subject to denial on reconsideration at any rate, because it is simply an attempt to "reargue[e] the law, . . . or petition[] a court to change its mind."  *Lyles*, C/A No. 4:14-1063-TMC, 2016 WL 1427324, at *1 (citing *Exxon Shipping Co.*, 554 U.S. at 485 n.5).

5

is "actually innocent" of violating 15 U.S.C. § 78j(b), he is entitled to *habeas* relief under the narrow "fundamental miscarriage of justice" exception to the limitation on second and successive motions within § 2255(h). (*Id*. at 3-4.)

B. **The Court's Review**

The court finds Petitioner's arguments on reconsideration to be unpersuasive. First, Petitioner's claim that the court relied on the wrong statute in its analysis cannot withstand scrutiny.[4] The court's Order did not reference § 77q, relying instead on the statutory text and Supreme Court caselaw interpreting 15 U.S.C. § 78j. (*See* ECF No. 41 at 10 (citing *Zandford*, 535 U.S. 813, 819).)

---

[4] Petitioner's claim appears to stem from language in the court's Order (ECF No. 41 at 10) excerpted from *Zandford*, wherein the Supreme Court explained its reasoning for deferring to the SEC's "broad reading" of the statutory requirement that the fraud occur "in connection with the purchase or sale of any security":

> In its role enforcing the Act, the SEC has consistently adopted a broad reading of the phrase "in connection with the purchase or sale of any security." It has maintained that a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5. *See, e.g., In re Bauer,* 26 S.E.C. 770, 1947 WL 24474 (1947); *In re Southeastern Securities Corp.,* 29 S.E.C. 609, 1949 WL 36491 (1949). This interpretation of the ambiguous text of § 10(b), in the context of formal adjudication, is entitled to deference if it is reasonable, *see United States v. Mead Corp.,* 533 U.S. 218, 229-230, and n.12 (2001). For the reasons set forth below, we think it is.

15 U.S.C. § 78j(b); *S.E.C. v. Zandford*, 535 U.S. 813, 819–20 (2002). Petitioner apparently takes issue with the fact that the Supreme Court described Zandford as a broker in the quoted language. While Zandford was indeed a broker (and Petitioner is not), this distinction is not relevant to the holding of either case, because Zandford, like Petitioner, was also convicted under § 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10-b(5), promulgated by the SEC pursuant to § 10(b) under its rulemaking power. *See* 17 C.F.R. § 240.10b-5. Zandford was separately convicted under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), but the Supreme Court's holding only addressed his conviction under § 78j, evident from the fact that the statute's "in connection with" language at the heart of the Court's decision is not found in § 77q.

Petitioner's second and third allegations of error both relate to his argument that the conduct underlying his guilty plea did not satisfy all the elements of § 78j(b).  Petitioner claims that he is actually innocent of the 15 U.S.C. § 78j(b) violation because the Government did not show a connection between his conduct and the purchase or sale of securities, which were not necessary to his scheme, as he put the stolen funds to personal use only.  Thus, he argues, he should not be subject to the limitation on successive *habeas* petitions established by § 2255(h) because his claim falls within the "fundamental miscarriage of justice exception." (ECF No. 44 at 4.)

As noted in the court's prior Order, Petitioner's claims for relief under § 2241 are statutorily barred unless Petitioner can demonstrate they satisfy the "savings clause" of § 2255(e), which permits a petitioner to seek relief under 28 U.S.C. § 2241 if § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C § 2255(e).  The Fourth Circuit has established two § 2255 savings clause tests, articulated in *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) (challenges to convictions) and *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018) (challenges to sentences).  Under Fourth Circuit law, claims involving actual innocence and the insufficiency of evidence against the defendant "attack the legality of [Petitioner's] conviction and subsequent sentence." *Coleman v. Brooks*, 133 Fed. App'x 51, 52 (4th Cir. 2005).  Thus, to establish that his claim falls within the § 2255 savings clause, Petitioner must demonstrate that he is entitled to relief pursuant to *In re Jones* and *Wheeler*. *Id*.  Claims of actual innocence cannot bypass this requirement.  This court has explicitly held that

> a petitioner may not argue the merits of his actual innocence claim until he has 'opened the portal to a § 2241 proceeding by demonstrating that the savings clause applies to his claim.  Only if a petitioner successfully 'opens the portal' will a court take the next step and determine if the petitioner can overcome a procedural default by showing 'actual innocence.'

7

*Garcon v. Cruz*, No. 6:14-CV-72-RMG, 2014 WL 819467, at *1 (D.S.C. Feb. 28, 2014), *aff'd*, 581 Fed. App'x 193 (4th Cir. 2014) (quoting *Fox v. Rivera*, No. CIVA207-1277-GRARSC, 2007 WL 2746716, at *3 (D.S.C. Sept. 14, 2007) (internal marks omitted)); *see also Johnson v. Reherman*, No. CV 1:19-00165, 2022 WL 228313, at *1 (S.D.W. Va. Jan. 25, 2022) ("[P]etitioner cannot get around the savings clause simply by claiming actual innocence."); *Martinez v. Coakly*, No. 2:16-CV-27, 2017 WL 460809, at *3 (N.D.W. Va. Feb. 2, 2017) ("[A] freestanding claim of actual innocence is not cognizable in federal habeas corpus."); *Ross v. Mitchell*, No. 6:10-CV-01891-GRA, 2010 WL 3522357, at *2 (D.S.C. Sept. 3, 2010) ("However, instead of showing that his petition satisfies the *In re Jones* test, Petitioner merely argues the merits of his actual innocence claim. 'A petitioner may not argue the merits of his [actual innocence] claim until he has "open[ed] the portal" to a § 2241 proceeding by demonstrating that the savings clause applies to his claim.'") Thus, Petitioner's argument that he is entitled to the "rare and narrow miscarriage of justice exception" in light of his asserted actual innocence (ECF No. 44 at 4) is unpersuasive because he cannot satisfy the requirements of the savings clause. The court is without jurisdiction to review his claim on the merits.[5]  *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010).

---

[5] In a recent opinion, the Fourth Circuit highlighted the incongruity between the actual innocence framework as articulated in *Schlup v. Delo,* 513 U.S. 298 (1995) and *Bousley v. United States*, 523 U.S. 614 (1998), and the savings clause test.  *See Hahn v. Moseley*, 931 F.3d 295, 305 (4th Cir. 2019) (Wynn, J., concurring).  Further, the Supreme Court has clarified the scope of the actual innocence exception by explaining that

> a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief.  'This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'

*McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  Where Congress has curtailed this equitable discretion through statute, however, the actual innocence exception can no longer apply.  *Id*. at 395-96 (explaining that Congress "did not

Even if the court considered Petitioner's actual innocence claim under *Schlup* and *Bousley*, however, Petitioner would still be ineligible for relief. The "narrow" actual innocence exception requires a petitioner to demonstrate newfound evidence showing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327 (1995). "To be credible, such a claim requires [P]etitioner to support his allegations [] with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id*. at 324. Here, in the context of Petitioner's guilty plea, his actual innocence claim amounts to a "challenge to the factual basis [of the] guilty plea." *United States v. Zehrbach*, 797 Fed. App'x 107, 108 (4th Cir. 2020).

A guilty plea constitutes an admission of guilt by the defendant which is entitled to a strong presumption of validity. *See United States v. Locke*, 932 F.3d 196, 199 (4th Cir. 2019) ("Guilty pleas are protected by a strong presumption, one 'deeply rooted in our jurisprudence'—the presumption of regularity. *Parke v. Raley*, 506 U.S. 20, 29 (1992). This venerable principle holds that guilty pleas are presumed to be valid. *Id.*"). Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires the district court to be satisfied "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The district court is not limited to the Rule 11 plea colloquy in reaching this determination, and "it 'may conclude that a factual basis exists from anything that appears on the record.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (citing *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir.1991)). Moreover, the district court "possesses wide discretion" in establishing the requisite factual basis and "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements

---

simply incorporate the miscarriage of justice exception into" the *habeas* statutes, but "[r]ather [] constrained the application of the exception." The bar to second or successive *habeas* motions imposed by § 2255(h) thus serves as a limit on the scope of the actual innocence exception.

of the offense." *Ketchum*, 550 F.3d at 366 (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir.1997)). Indeed, even a "stipulated recitation of acts alone is sufficient to support a plea." *Ketchum*, 550 F.3d at 367 (citing *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir.1996)).

Petitioner cannot establish that the factual basis for his guilty plea was inadequate. Indeed, his repeated argument regarding the transactional nexus element of the offense has been deemed meritless and rejected each time it has been brought on direct appeal and post-conviction review.[6] At no point has Petitioner put forward credible evidence of his asserted innocence supporting his claim that he did not transact securities with the funds he stole. He has presented no bank or brokerage statements, no witness testimony, and no transaction records to support his contention. He has only presented his conclusory and self-serving statements to this effect, which fall far short of the *Schlup* threshold for demonstrating that a claim qualifies for the fundamental miscarriage of justice exception. *See, e.g., Pelletier v. Clarke*, No. 7:16CV00322, 2017 WL 2313487, at *3 (W.D. Va. May 25, 2017) (Petitioner's "many self-serving statements do not form the basis of a fundamental miscarriage of justice. 'To permit such self-serving testimony to suffice would set the bar 'so low that virtually every [actual innocence] claimant would pass through it.'") (footnote omitted). These bare allegations are not sufficient to overcome Petitioner's sworn testimony during the Rule 11 colloquy and the sentencing hearing, where he admitted to the underlying conduct and heard witness testimony confirming he had falsely held himself out as an investment advisor to induce his victims to send him money and misrepresented his intentions to invest the victims' funds into "mid-cap growth stocks." (*Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF

---

[6] Reviewing Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255, the sentencing court rejected this argument because "Petitioner ha[d] not alleged or shown extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing." (*Carryl*, Crim. No. 3:18-cr-00291-MOC-DCK, ECF No. 76 at 8.)

No. 71 at 13 (emphasis added).)  Critically, Petitioner did not object to testimony stating *that "some of [these securities] were purchased*."  (*Id.*, ECF No. 71 at 13 (emphasis added).)  This sworn testimony, given in Petitioner's presence and under cross-examination by counsel, rebuts Petitioner' conclusory assertion that he did not use the embezzled funds to transact securities, and that these securities transactions were unrelated to his overall scheme.  The court also notes that the Government described other evidence in the case in its trial brief, filed before Petitioner pleaded guilty:

> There can be no dispute that Defendant's scheme involved the purchase or sale of a "security" within the meaning of the securities laws.  The false and misleading statements and omissions in Defendant's scheme were made in connection with and in furtherance of his scheme to deceive potential investors who believed they were investing in the shares of public companies.  *See S.E.C. v. Zandford*, 535 U.S. 813, 822-24 (2002).  As set forth above, Defendant actually did purchase real securities as part of his scheme – just not the ones he claimed he was going to purchase.  He ultimately sold those securities and used the proceeds to pay for personal and other unrelated expenses.  *Id*.  ("It is enough that the scheme to defraud and the sale of securities coincide.")

(*Id.*, ECF No. 25 at 6-7.)  The court recognizes that these statements comprise argument in preparation for trial rather than direct evidence of Petitioner's misconduct.  Nonetheless, these statements indicate that the Government possessed more detailed facts regarding Petitioner's actions, including his trading losses and other securities transactions, than what it presented (and was required to present) at the plea hearing.  The Government went on to delineate the sources of the documentary evidence of Petitioner's offense, stating that "a large portion [thereof] consists of business records, including bank statements, brokerage records, telephone records," and other documents kept in the ordinary course of business.  (*Id.*, ECF No. 25 at 18.)  Such evidence of guilt is normally presented to defendants and counsel during the bargaining stage and plays a part in inducing their guilty plea.  The Government is not required to put forward every evidence of guilt it has in its possession in a guilty hearing, by "replicat[ing] the trial that the parties sought to

11

avoid." *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008). Petitioner's failure to present evidence of his alleged innocence here (and at any other point in these cumulative proceedings) is fatal to his actual innocence claim, even if the jurisdictional barrier set by § 2255(h) did not apply. Because Petitioner has not demonstrated clear error, his Motion for Reconsideration must be denied.

## IV.     CONCLUSION

For the reasons set forth above, the court **DENIES** Petitioner's Motion for Reconsideration. (ECF No. 44.)

## V.     CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 536 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the court **DECLINES** to grant a certificate of appealability.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 19, 2022
Columbia, South Carolina